IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:13-CV-13-D

| | | |
|---|---|---|
| KEITA EUGENA PRICE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| M.R.S. ASSOCIATES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

On December 3, 2012, Keita Eugena Price ("Price" or "plaintiff") filed a complaint against M.R.S. Associates, Inc. ("MRS") and Vital Recovery Services, Inc. ("Vital") (collectively, "defendants") in Bladen County Superior Court, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692p, and the North Carolina Collection Agency Act ("NCCAA"), N.C. Gen. Stat. §§ 58-70-1 to 58-70-155. Compl. [D.E. 1-3]. Defendants removed the case to this court. [D.E. 1]; see 28 U.S.C. §§ 1331, 1441; 15 U.S.C. § 1692k(d). On July 24, 2013, Price voluntarily dismissed her complaint with prejudice as to Vital. [D.E. 27]; see Fed. R. Civ. P. 41(a)(1). On October 31, 2013, MRS moved for summary judgment [D.E. 28, 32]. On November 25, 2013, Price responded in opposition [D.E. 30]. On December 19, 2013, MRS replied [D.E. 36]. As explained below, the court grants MRS's motion for summary judgment on Price's federal-law claims and on one of her state-law claims, and remands the other state-law claim.

I.

On September 29, 2007, Price obtained a loan from Wells Fargo Bank, N.A. ("Wells Fargo") to buy a vehicle for personal, household, or family use. See Compl. ¶ 6; Perkins Aff. [D.E. 29-1] ¶ 5 & Ex. B. On March 27, 2009, thieves stole Price's vehicle and used it as transportation during

a crime spree. See Compl. ¶¶ 7–8. The police recovered the vehicle, but the thieves had damaged it significantly, greatly reducing its value. See id. ¶¶ 9–10. Price alleges that she made her last payment on the vehicle no later than March 7, 2009. See id. ¶ 11.

On May 24, 2011, Wells Fargo retained MRS to collect Price's debt. See id. ¶ 13; Perkins Aff. ¶ 5. MRS sent a letter to Price, and made several phone calls to her, in order to collect the debt. See Compl. ¶ 14; Perkins Aff. ¶ 8. Price contends that she received at least twenty calls from March 8, 2012, through June 15, 2012. See Price Aff. [D.E. 11-1] ¶ 3. "To stop MRS's illegal harassment," Price retained an attorney, who sent MRS a cease-communication letter. Compl. ¶ 18; see Price Aff. ¶ 6; [D.E. 11-1] 3. Price did not hear from MRS again. See Price Aff. ¶ 7.

On December 3, 2012, Price filed a complaint against MRS. Price alleges that MRS attempted "to collect a time-barred debt without disclosing what rights [she] would be giving up by acknowledging the debt . . . [or] making a part payment on the debt" in violation of 15 U.S.C. § 1692f and N.C. Gen. Stat. § 58-70-115(1). Compl. ¶ 17. Price also alleges that MRS engaged in collection activity without holding the required permit from the North Carolina Commissioner of Insurance, in violation of 15 U.S.C. § 1692f and N.C. Gen. Stat. § 58-70-115. See Compl. ¶ 15. MRS seeks summary judgment on Price's claims [D.E. 28, 32].

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). In evaluating a motion for summary judgment, the court views the evidence and the inferences drawn from that evidence in the light most favorable to the nonmoving party. See Tolan v. Cotton, 134 S. Ct. 1861, 1863 (2014) (per curiam); Scott v. Harris, 550 U.S. 372, 378 (2007).

2

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 325. That is, the moving party must show the existence of a "dispute[] over [a] fact[] that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. Once the moving party has met its burden, the nonmoving party "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). The nonmoving party must do more than present a "scintilla of evidence" in its favor. Anderson, 477 U.S. at 252. Rather, the nonmoving party must present "sufficient evidence" such that reasonable jurors could find for it. Id. at 249. Accordingly, a court may grant summary judgment if the nonmoving party's evidence is "merely colorable" or "not significantly probative." Id. at 249–50.

A.

The court first addresses Price's claims regarding MRS's alleged attempt to collect time-barred debt. In North Carolina, the statute of limitations for "a contract, obligation[,] or liability arising out of a contract" is three years. N.C. Gen. Stat. § 1-52(1). Price contends that she made her last payment on the vehicle no later than March 7, 2009, and that the statute of limitations for her debt expired on March 7, 2012. See Compl. ¶¶ 11–12; Price Aff. [D.E. 11-1] ¶ 2. Price also contends that MRS called her at least twenty times between March 8, 2012, and June 15, 2012 to attempt to collect her time-barred debt. See Compl. ¶ 16; Mem. Opp'n Mot. Summ. J. 2; Price Aff. ¶ 3. Price claims that MRS violated 15 U.S.C. § 1692f and N.C. Gen. Stat. § 58-70-115(1) by "attempt[ing] to collect a time-barred debt without disclosing what rights [she] would be giving up by acknowledging the debt[,] and [without disclosing] that making a part payment on the debt would

3

restart the statute of limitations [and amount] to an admission that [she] owed the debt." Compl. ¶ 17.

MRS seeks summary judgment on two grounds. First, MRS contends that it did not attempt to collect a time-barred debt. See Mem. Supp. Mot. Summ. J. 4. MRS claims that Price made her last payment on the vehicle on October 24, 2009, and that the statute of limitations for her debt thus expired on October 24, 2012. See id. In support, MRS cites the payment history for Price's account, which Wells Fargo gave to MRS upon retaining MRS to collect the debt Price owed. See Perkins Aff. Ex. C. The payment history shows that seven payments—all via Money Gram—were made on Price's account after March 7, 2009, the last one on October 24, 2009. See id. MRS also claims that it ceased its efforts to collect Price's debt on May 11, 2012, well before the statute of limitations expired. See Mem. Supp. Mot. Summ. J. 3. It cites its own account history in support of this claim. See Perkins Aff. Ex. D. Alternatively, MRS maintains that even if it did attempt to collect a time-barred debt, it did not violate either 15 U.S.C. § 1692f or N.C. Gen. Stat. § 58-70-115(1). See Mem. Supp. Mot. Summ. J. 4–6.

In response, Price presents no evidence to discredit the Wells Fargo payment history. Rather, she relies solely on her own affidavit, in which she states that she made her last payment on the vehicle no later than March 7, 2009. See Price Aff. ¶ 2. Price contends that her affidavit is sufficient to create a factual dispute defeating MRS's motion for summary judgment. Mem. Opp'n Mot. Summ. J. 3.

The court need not resolve this issue. Even if MRS did attempt to collect a time-barred debt, it did not violate either 15 U.S.C. § 1692f or N.C. Gen. Stat. § 58-70-115(1). As for Price's federal-law claim, the FDCPA does not prohibit a collection agency from requesting payment on a time-barred debt, even if the collection agency does not disclose that the debt is time-barred and that any partial payment or acknowledgment would result in the debt's revival, as long as in doing so, the

4

collection agency does not threaten or commence litigation. See, e.g., Freyermuth v. Credit Bureau Servs., Inc., 248 F.3d 767, 771 (8th Cir. 2001); Jenkins v. RJM Acquisitions, LLC, Civil Action No. 5:10CV27-RLV, 2013 WL 589006, at *3 (W.D.N.C. Feb. 14, 2013) (unpublished); Mavilla v. Absolute Collection Serv., Inc., No. 5:10-CV-412-F, 2013 WL 140046, at *12 (E.D.N.C. Jan. 10, 2013) (unpublished); Reed v. AFNI, Inc., No. 2:09-CV-459 TS, 2011 WL 112430, at *2 (D. Utah Jan. 13, 2011) (unpublished); Wallace v. Capital One Bank, 168 F. Supp. 2d 526, 528 (D. Md. 2001) (collecting cases). After all most statutes of limitations (including North Carolina's) bar the remedy of suit, but do not extinguish the debt itself. See, e.g., Freyermuth, 248 F.3d at 771; Wallace, 168 F. Supp. 2d at 528; cf. Davis v. Mills, 194 U.S. 451, 456 (1904); Simonton v. Clark, 65 N.C. 525, 526 (1871); Mrozek v. Mrozek, 129 N.C. App. 43, 46, 496 S.E.2d 836, 839 (1998). Price does not show—indeed, she does not even allege—that MRS threatened or commenced litigation. Accordingly, the court grants MRS's motion for summary judgment on Price's claim that MRS violated 15 U.S.C. § 1692f by attempting to collect time-barred debt.

As for Price's state-law claim, Price proceeds under N.C. Gen. Stat. § 58-70-115(1), which prohibits a collection agency from "seeking or obtaining . . . an acknowledgment of any debt barred by the statute of limitations, or a waiver of any legal rights of the debtor[,] without disclosing the nature and consequences of such affirmation or waiver and the fact that the consumer is not legally obligated to make such affirmation or waiver." Although Price alleges that MRS "attempt[ed] to collect a time-barred debt without disclosing what rights [she] would be giving up by acknowledging the debt," Compl. ¶ 17, she does not allege that MRS ever sought or obtained an acknowledgment from her in any form, much less the written acknowledgment needed to renew an expired statute of limitations in North Carolina. See N.C. Gen. Stat. § 1-26 ("No acknowledgment or promise is evidence of a new or continuing contract, from which the statutes of limitations run, unless it is

5

contained in some writing signed by the party to be charged thereby . . . ."); Jenkins, 2013 WL 589006, at *4–5; George W. Helm Co. v. Griffin, 112 N.C. 356, 356, 16 S.E. 1023, 1024 (1893). Moreover, Price provides no evidence on this point in opposition to MRS's motion for summary judgment. Accordingly, the court grants MRS's motion for summary judgment on Price's claim that MRS violated N.C. Gen. Stat. § 58-70-115(1) by attempting to collect a time-barred debt.

B.

The court next addresses Price's claims regarding MRS's permit. Under North Carolina law, a collection agency must first secure a permit from the Commissioner of Insurance before engaging in any debt-collection activity in the state. See N.C. Gen. Stat § 58-70-1. Engaging in debt-collection activity in North Carolina without a permit subjects the collection agency to criminal penalties. See id. According to Price, MRS lacked a permit when it attempted to collect the debt she owed to Wells Fargo. See Compl. ¶ 4. Price contends that a collection agency that operates without a permit in violation of N.C. Gen. Stat. § 58-70-1 collects or attempts to collect debt by the use of an "unfair practice," in violation of 15 U.S.C. § 1692f and N.C. Gen. Stat. § 58-70-115. See Compl. ¶ 15.[1]

MRS seeks summary judgment on these claims because it maintains that it holds a valid permit to collect debt in North Carolina. See Mem. Supp. Mot. Summ. J. 3–4. MRS claims that it operated as the entity that Price sued—M.R.S. Associates, Inc.—only until 2008, that it has since changed its name to MRS BPO, LLC ("MRS BPO"), and that MRS BPO has a permit to collect debt

---

[1] In her memorandum in opposition to MRS's motion for summary judgment, Price claims for the first time that MRS violated 15 U.S.C. §§ 1692e(5) and (10) by attempting to collect Price's debt without a permit. See Mem. Opp'n Mot. Summ. J. 6. Price cannot add these claims to her complaint via summary-judgment briefing. See, e.g., Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 617 (4th Cir. 2009) (collecting cases); Swann v. Source One Staffing Solutions, 778 F. Supp. 2d 611, 622–23 (E.D.N.C. 2011). Thus, the court does not consider the arguments.

6

in North Carolina. See id. In support, MRS offers the affidavit of William Michael Perkins ("Perkins"), the Quality Assurance Manager for MRS BPO. See Perkins Aff. ¶ 1. Perkins bases his knowledge of MRS BPO's permit status on "[a] simple internet search of the North Carolina Department of Insurance website," id. ¶ 4, and attaches to his affidavit a printout from that website showing that MRS BPO holds a valid permit to collect debt in North Carolina. See Perkins Aff. Ex. A [D.E. 29-2].

In response, Price claims that, contrary to Perkins's declaration, M.R.S. Associates, Inc. and MRS BPO are separate entities. See Mem. Opp'n Mot. Summ. J. 10. She offers evidence of her own internet search in support: two printouts from the North Carolina Department of the Secretary of State's website showing that M.R.S. Associates, Inc. and MRS BPO are separate, active corporations in North Carolina, each with its own Secretary of State Identification ("SOSID") number. See [D.E. 30-3]. MRS does not address Price's claim, or her evidence, in its reply.

Viewing the evidence in the light most favorable to Price, the court concludes that a reasonable jury could find that MRS did not hold the required permit when it attempted to collect Price's debt. Nonetheless, this factual dispute about MRS's permit status does not "affect the outcome of [Price's] suit under . . . governing [federal] law." Anderson, 477 U.S. at 248.

Price contends that MRS violated 15 U.S.C. § 1692f, the FDCPA's prohibition on a collection agency's use of "unfair practices," by failing to comply with N.C. Gen. Stat. § 58-70-1, the NCCAA's permit requirement. See Compl. ¶ 15. Sometimes a violation of the NCCAA may support a federal cause of action under the FDCPA. See, e.g., LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1190 (11th Cir. 2010); Bradshaw v. Hilco Receivables, LLC, 765 F. Supp. 2d 719, 729 (D. Md. 2011); see also Myers v. Sessoms & Rogers, P.A., 781 F. Supp. 2d 264, 269 (E.D.N.C. 2011). Debt collection practices in violation of state law, however, do not "per se" violate the

7

FDCPA. Wade v. Reg'l Credit Ass'n, 87 F.3d 1098, 1100 (9th Cir. 1996); see Carlson v. First Revenue Assurance, 359 F.3d 1015, 1018 (8th Cir. 2004) ("The FDCPA . . . was not meant to convert every violation of a state debt collection law into a federal violation."); Smith v. LVNV Funding, L.L.C., 894 F. Supp. 2d 1045, 1050 (E.D. Tenn. 2012) (collecting cases). Accordingly, a collection agency that collects or attempts to collect any debt without a required state permit does not necessarily use "unfair or unconscionable means" in violation of 15 U.S.C. § 1692f. See, e.g., LeBlanc, 601 F.3d at 1200; see also Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC, 480 F.3d 470, 473 (7th Cir. 2007) (declining "to use [section] 1692f to enforce other legal rules [under the] theory that it is 'unfair' or 'unconscionable' for a debt collector to violate any other rule of positive law"). At best, a collection agency's failure to comply with state permit requirements is "an appropriate consideration in deciding whether [a collection agency's] 'means' of collection were 'unfair or unconscionable.'" LeBlanc, 601 F.3d at 1200 (quoting 15 U.S.C. § 1692f); cf. Bradshaw, 765 F. Supp. 2d at 729. Another appropriate consideration, of course, is the collection agency's chosen means themselves. Put differently, without evidence that an unlicensed entity's letters, telephone calls, or other collection efforts were in any way unfair or unconscionable, the court is left with an allegation of a per se violation—which is insufficient to survive a motion for summary judgment. See, e.g., Wade, 87 F.3d at 1100 & n.2.

Price has not shown how MRS's failure to comply with North Carolina's permit requirement made its chosen means of collecting her defaulted debt—namely, sending a letter and calling multiple times—unfair or unconscionable. See Leblanc, 601 F.3d at 1200. Indeed, Price does not even recount what MRS stated in the letter it sent to her, or what MRS representatives said in any telephone conversations with her. Without such evidence, a reasonable jury could not conclude that MRS's letter or telephone conduct was "unfair or unconscionable" "in either a legal or lay sense."

8

Wade, 87 F.3d at 1100–01 & n.2. Accordingly, the court grants MRS's motion for summary judgment on Price's FDCPA claim based on MRS's alleged violation of N.C. Gen. Stat. § 58-70-1.

Price also contends that MRS violated N.C. Gen. Stat. § 58-70-115, the NCCAA's prohibition on a collection agency's use of "unfair practices," by failing to comply with N.C. Gen. Stat. § 58-70-1, the NCCAA's permit requirement. See Compl. ¶ 15. This issue is one of first impression in North Carolina.

The court has granted summary judgment for MRS on Price's federal-law claims, and on one of Price's state-law claims. Thus, the only remaining issue is one of state law. The remaining state-law claim, however, raises a novel question of North Carolina law. Accordingly, the court declines to exercise supplemental jurisdiction over the remaining state-law claim, and remands the claim to Bladen County Superior Court. See 28 U.S.C. § 1367(c)(1), (3); Waybright v. Frederick Cnty., 528 F.3d 199, 209 (4th Cir. 2008); Farlow v. Wachovia Bank of N.C., N.A., 259 F.3d 309, 316–17 (4th Cir. 2001); Thompson v. Prince William Cnty., 753 F.2d 363, 365 (4th Cir. 1985).

II.

In sum, the court GRANTS MRS's motion for summary judgment [D.E. 28, 32] on Price's federal-law claims and on one of Price's state-law claims. The court declines to exercise supplemental jurisdiction over Price's state-law claim concerning N.C. Gen. Stat. § 58-70-115 and § 58-70-1 and REMANDS this claim to Bladen County Superior Court. The clerk shall close the case.

SO ORDERED. This 27 day of June 2014.

JAMES C. DEVER III
Chief United States District Judge